972 A.2d 413 (2009)
407 N.J. Super. 538
KAS ORIENTAL RUGS, INC., Plaintiff-Respondent/Cross-Appellant,
v.
Matt ELLMAN, Defendant-Appellant/Cross-Respondent.
DOCKET NO. A-2567-07T2.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2009.
Decided June 8, 2009.
*415 George W.C. McCarter, Red Bank, argued the cause for appellant/cross-respondent (McCarter & Higgins, attorneys; Mr. McCarter, of counsel and on the brief).
Jeffrey Schreiber, New York City, argued the cause for respondent/cross-appellant (Meister, Seelig & Fein, attorneys; Mr. Schreiber, on the brief).
Before Judges Cuff, FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
*416 FISHER, J.A.D.
In this appeal, we consider the consequences of the Rule 4:58 amendments, which were adopted subsequent to an offer of judgment and its rejection, but prior to an award of fees. Last term, our Supreme Court considered a similar perplexing problem, Romagnola v. Gillespie, Inc., 194 N.J. 596, 947 A.2d 646 (2008), and recently heard argument in another, Best v. C & M Door Controls, Inc., 402 N.J.Super. 229, 953 A.2d 775 (App.Div.), certif. granted, 197 N.J. 13, 960 A.2d 743 (2008).
Here, we consider yet another variation of the problems considered in Romagnola and Best. The trial in this action produced an award in favor of defendant Matt Ellman[1] that exceeded the offer of judgment he rejected. In reviewing the judgment, Kas Oriental Rugs, Inc. v. Ellman, 394 N.J.Super. 278, 926 A.2d 387 (App.Div.), certif. denied, 192 N.J. 74, 926 A.2d 858 (2007), we reduced the damage award and, for the first time, made relevant Ellman's rejection of Kas's offer of judgment; however, by the time we decided the appeal Rule 4:58 had been amended and, in its amended form, made available defenses to a fee allowance that were not expressed in the Rule as it existed when the offer was made and rejected.
We hold that, absent an injustice or interference with vested rights, Rule 4:58 amendments should apply to cases pending at the time of amendment. Even if this were not so, we would in this case apply the new rule amendments due to the idiosyncratic nature of the circumstances presented. As a result, we reverse the allowance of fees in Kas's favor and remand for further proceedings.

I
This litigation has been more fully described in our earlier opinion in this matter. In a nutshell, the parties' disputes were triggered on February 27, 2004, when Kas wrote to Ellman, advising he was terminated from his position as sales representative effective March 1, 2004.
Before suit was filed, Kas recognized that Ellman was entitled to commissions on purchase orders that were "in house" as of March 1, 2004. To resolve the matter before litigation was commenced, Kas offered to pay Ellman commissions on purchase orders "in house" through April 30, 2004. At trial, Kas's president testified that this was a "good will gesture." 394 N.J.Super. at 282, 926 A.2d 387. Ellman rejected this offer, contending he was entitled to a far greater amount in post-termination commissions.
Kas brought this declaratory judgment action on April 5, 2004, seeking a determination of the commissions or other obligations it owed Ellman, who filed a counterclaim for commissions he claimed were due and owing. The parties engaged in extensive discovery and eventually proceeded to trial.
Following a bench trial, the judge recognized that Ellman was entitled to pre-termination commissions in an amount stipulated by the parties: $12,774.02. The judge also held that Ellman was not wrongfully terminated and that the parties' oral agreement limited Kas's obligation to pay commissions to those "in house" on the termination date, i.e., $12,774.02, but he also held, based on a quantum meruit theory, that Ellman was entitled to $15,987.33 in post-termination *417 commissions, as well as an additional $48,736.95 in counsel fees and costs. Kas appealed, arguing that the judge's findings as to the terms of the parties' oral agreement precluded the post-termination commission award, and that the award of counsel fees was either precluded by the circumstances or unreasonable; Ellman cross-appealed, arguing that he should have been awarded additional counsel fees and costs.
We held that Ellman was not entitled to post-termination commissions. We also concluded that "[b]ecause our decision regarding the compensatory damages to which Ellman was entitled dramatically alters the landscape upon which the judge's fee award was based," "a fresh look by the judge of the parties' contentions in this regard" was required. Id. at 289, 926 A.2d 387. We recognized that the ultimate resolution of Ellman's fee claim turned on application of the Sales Representatives' Rights Act (SRRA), N.J.S.A. 2A:61A-1 to -7; we also noted that Kas had made an offer of judgment that might come into play in light of our judgment. 394 N.J.Super. at 290-91, 926 A.2d 387.

II
In furtherance of our mandate, an order was entered on August 23, 2007. That order fixed Ellman's compensatory damages at $12,774.02, and scheduled the necessary additional proceedings required to resolve the competing counsel fee disputes. In accordance with that schedule, Ellman filed papers in support of his request for SRRA counsel fees. Kas thereafter filed papers in support of its request for counsel fees pursuant to the offer of judgment rule, Rule 4:58-3, the frivolous litigation statute, N.J.S.A. 2A:15-59.1., and the SRRA.
The remand judge took no testimony.[2] She instead heard argument on the parties' legal contentions.
In support of his claim for fees and court costs, Ellman argued that N.J.S.A. 2A:61A-2 obligated Kas to pay "the commissions and other compensation earned and unpaid through the last day of the contract ... within 30 days."[3]N.J.S.A. 2A:61A-3a then declared that a violation of N.J.S.A. 2A:61A-2 renders a principal "liable to the sales representative for all amounts due the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs."[4] Because there is no dispute that Kas never paid the stipulated pre-termination commissions, Ellman claimed he was entitled to an award of fees flowing from that failure.
*418 By way of an oral decision of November 2, 2007, the judge rejected this contention for the following reasons:
Now Mr. Ellman's motion for attorney's fees and costs pursuant to [N.J.S.A. 2A:61A-3]. I don't believe that Mr. Ellman  I don't believe that that comes into play here. And I don't believe it's applicable to the issue that we have.
[N.J.S.A. 2A:61A-2] states that when a contract between a principal and sales representative to solicit wholesale orders is terminated the commissions and compensations earned and unpaid through the last day of the contract shall be due and payable within 30 days.
This is a  and they're saying that these monies have not been paid. However, here this case has been well litigated and there was even a bond taken by the Kas  by the plaintiffs in this matter to be able to appeal this matter. So in essence that bond ensured that that payment would be made.
But, again, in New Jersey customarily and under case law the judgment  as long as there's a bond the judgment does not have to be paid. This case was remanded by the Appellate Division. Again, until the  until the lower [c]ourt completely heard this and 45 days for the time of appeal has passed that's when the judgment is due and owing.
And none of those things have happened here yet. So, therefore, I don't believe  and the moment that there's a litigation and agreeably Kas instituted the litigation that this litigation was ongoing I don't believe that [N.J.S.A. 2A:61A-2] did apply. And, therefore, there will be no award of attorney's fees for Mr. Ellman.
The judge decided Kas's application for fees and costs by way of a letter opinion dated November 30, 2007. The judge did not consider the claim insofar as it was based on the frivolous litigation statute or the SRRA, but concluded that Kas was entitled to fees through application of Rule 4:85. The judge observed that Kas sought $500,000 in fees and costs,[5] but found that such an award would impose undue hardship and concluded that a fee of $218,271.21 was reasonable. This amount was determined by using the date of the trial as a cutoff of the allowable fees in this case.
As a result, after deducting the compensatory damages due Ellman of $12,774.02, the judge entered judgment in favor of Kas and against Ellman in the amount of $205,497.19.
Ellman appealed, arguing that the judge misapplied Rule 4:85 in a number of respects and "disregarded the letter and the policy" of the SRRA in denying his application for fees; he lastly argues that even if Kas is entitled to fees, the amount of the award was unreasonable. Kas cross-appealed, arguing: the judge's finding of an undue hardship was erroneous and "legally irrelevant"; the judge failed to award prejudgment interest as required by the offer of judgment rule; and the judge mistakenly made no mention of the frivolous litigation statute and the SRRA as bases for an award of counsel fees.

III
As we observed at the outset, this case presents another difficult problem regarding the impact of the amendments to Rule 4:58 on these pending proceedings. In resolving these questions, we: (a) recognize that the application of the 2004 version of Rule 4:58 would permit an award in favor of Kas; (b) but conclude that, in these circumstances, the newer version of *419 the rule, which became effective when this case was last pending appeal, should be applied; and (c) determine that application of the current version of Rule 4:58 bars an allowance of fees in favor of Kas.

A
On November 9, 2004  a few months after the parties stipulated that "[t]he amount of commissions to be paid on orders in house at Kas as of the date of Ellman's termination from Kas and not yet paid to Ellman is $12,774.02"  Kas's counsel served an offer of judgment on Ellman's counsel. That pleading cited Rule 4:58 and contained Kas's offer "to allow judgment to be taken against [Kas] in the following manner: for the sum of $16,020.12, with the parties each to bear their respective costs." Ellman rejected the offer. As we have noted, the case was tried in 2005, resulting in a judgment in favor of Ellman that rendered the offer of judgment irrelevant; however, as a result of our decision on appeal, Ellman's compensatory damage award was reduced to $12,774.02, bringing Ellman's earlier rejection of Kas's offer of judgment into play.
At the time Kas's offer was made and rejected, Rule 4:58-3 stated:
If the offer of a party other than the claimant is not accepted and the determination is favorable to the offeror as defined by this rule, the offeror shall be allowed, in addition to costs of suit, the allowances as prescribed by R. 4:58-2, which shall constitute a prior charge on the judgment. A favorable determination qualifying for allowances under this rule is a verdict or determination at least as favorable to the offeror as the offer or, if a money judgment, is in an amount, excluding allowable prejudgment interest and counsel fees, that is 80% of the offer or less.
Viewing the relevant circumstances against these standards, by rejecting Kas's offer of $16,020.12, Ellman's "verdict or determination" had to meet or exceed 80% of the offer to avoid liability for the consequences of his rejection. Because 80% of the offer is $12,816.10, Ellman's award of $12,774.02 fell short of the 80% mark by $42.08.
The "verdict or determination" referred to in the earlier version of Rule 4:58-3 is gauged by the amount awarded less prejudgment interest, fees and costs. See Lobel v. Trump Plaza Hotel and Casino, 335 N.J.Super. 319, 322-23, 762 A.2d 305 (App.Div.2000). Accordingly, if this is the version of the rule to be applied in the matter at hand, Ellman was potentially liable for fees based upon his rejection of the offer. Although he argued in the trial court that he was not liable to Kas for fees based upon the 2004 version of the offer of judgment rule,[6] with new counsel on appeal Ellman only argues that the version adopted in 2006 applies and that it bars relief.
We agree that the 2004 version, if applied, renders Ellman liable to pay Kas's fees, even though the amount of the award is greatly disproportionate to the difference between the judgment and the rejected offer. Our courts have not previously held that fee allowances based on the Rule could be denied or reduced *420 because of a slim margin, here $42.08, that triggered its application. See City of Cape May v. Coldren, 329 N.J.Super. 1, 7, 746 A.2d 1003 (App.Div.2000) (sixty-eight-cent difference between offer and verdict); Sussna Assocs. v. Randolph Twp., 122 N.J.Super. 458, 459, 300 A.2d 857 (App. Div.1973) ($350 difference). The rule creates a bright, monetary line in determining when fees will or will not be shifted. We, thus, turn to the later amendments to the rules and the important question of whether those amendments or the rule as it previously existed apply to this case.

B
In 2006, while this matter was on appeal, Rule 4:58-3 was amended. The phrase "monetary judgment" has replaced "verdict or determination" and other limitations on awards based on the rule were incorporated to avoid difficulties presented by the less-nuanced former version:
(a) If the offer of a party other than the claimant is not accepted, and the claimant obtains a monetary judgment that is favorable to the offeror as defined by this rule, the offeror shall be allowed, in addition to costs of suit, the allowances as prescribed by R. 4:58-2, which shall constitute a prior charge on the judgment.
(b) A favorable determination qualifying for allowances under this rule is a money judgment in an amount, excluding allowable prejudgment interest and counsel fees, that is 80% of the offer or less.
(c) No allowances shall be granted if (1) the claimant's claim is dismissed, (2) a no-cause verdict is returned, (3) only nominal damages are awarded, (4) a fee allowance would conflict with the policies underlying a fee-shifting statute or rule of court, or (5) an allowance would impose undue hardship. If, however, undue hardship can be eliminated by reducing the allowance to a lower sum, the court shall reduce the amount of the allowance accordingly.
Before turning to the parties' arguments concerning the manner in which this new version would apply to Ellman's rejection of Kas's offer of judgment, we consider the question of whether this new version should apply to an offer made and rejected while the former version was in effect.
Whether the offer of judgment rule is "procedural" and therefore applied retrospectively, was briefly discussed in the recent decision of the Supreme Court in Romagnola and our decision in Best, which is now before the Court. In Romagnola, the Court noted that we had, in our unpublished opinion in that case,
assume[d] ... that "R[ule] 4:58 is a rule of procedure[,]" (citing Crudup v. Marrero, 57 N.J. 353, 273 A.2d 16 (1971); Busik v. Levine, 63 N.J. 351, 360-61, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973)); that "[a] procedural rule is `in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter[,]'" (quoting Paulison Ave. Assoc. v. Passaic City, 18 N.J.Tax 101, 113 (Tax Ct.1999)); and that plaintiff's "rights had not vested at the time Rule 4:58-2 was amended."
[194 N.J. at 603-04, 947 A.2d 646.]
Rather than determine whether the offer of judgment rule is procedural and to be retrospectively applied, the Court utilized Rule 1:1-2 to avoid an injustice that would flow from the application of the newer version. Id. at 604, 947 A.2d 646. Although the Court adhered to its long-standing approach that Rule 1:1-2 "should be sparingly resorted to, particularly when a reasonable interpretation of the complex of directly applicable rules meets the problem *421 at hand," ibid. (quoting Pressler, Current N.J. Court Rules, comment 2 to Rule 1:1-2 (2007)), it concluded that in the "peculiarly idiosyncratic set of facts presented," relaxation was appropriate, ibid.
In Romagnola, the facts revealed that a valid offer of judgment was made and rejected, a trial occurred, and post-trial submissions were supplied to the trial judge while the former version of the Rule was still in effect. The trial judge, however, reserved decision for three months following the post-trial submissions; three weeks prior to the judge's decision on the merits, Rule 4:58 was amended. Id. at 605, 947 A.2d 646. The amendments negated the fee allowance plaintiff would have obtained if the former rule applied. Ibid. In applying Rule 1:1-2 to permit relief under the former rule, the Court stated:
We are persuaded that, had the trial court advanced its decision by three weeks, or had the amendments to Rule 4:58-2 been deferred by an equal period, this controversy would not have arisen. In short, our finding means nothing more than defendants simply must abide by the rules as they existed when, well knowing the consequences, defendants elected not to accept plaintiff's offer of judgment. Further, our finding denies defendants nothing other than an unearned windfall arising solely from an accident of timing.
[Id. at 606, 947 A.2d 646.]
In Best, we considered a similar problem when an offer was made and rejected, a trial occurred and a jury verdict rendered under the earlier version of the Rule, but the motion for fees was not filed until after the 2006 amendments had become effective. There, in contemplating application of the particular rule amendment that precludes "a fee allowance [that] would conflict with the policies underlying a fee-shifting statute or rule of court," Rule 4:58-3(c)(4), the Best majority found "no principled reason to revert to the prior version of the Rule by employing Rule 1:1-2 or some other rationale," 402 N.J.Super. at 242, 953 A.2d 775. Instead, the Best majority held that the prior version of the Rule also implicitly questioned the permissibility of an allowance when it would conflict with the policies of a fee-shifting statute. Ibid. Judge Stern concurred, emphasizing his view that the admonition in Rule 4:58-3(c)(4) has "been the same long before the 2006 amendments were adopted" and that nothing was presented to "suggest[ ] the offer of judgment rule was ever designed to apply when the public policy of our state was embodied in a fee-shifting statute which permits recovery by a prevailing party." 402 N.J.Super. at 253-54, 953 A.2d 775. As we have noted, the Supreme Court granted certification in Best, and has heard argument but not yet ruled.
In rejecting the contention that the pre-2006 version of the Rule should be applied, we follow the general rule declared by the Court in Feuchtbaum v. Constantini, 59 N.J. 167, 172, 280 A.2d 161 (1971), and adhere to our earlier view that Rule 4:58 is procedural in nature and subject to being retrospectively applied. See Shimm v. Toys From The Attic, Inc., 375 N.J.Super. 300, 304-05, 867 A.2d 1204 (App.Div.2005); see also Lobel, supra, 335 N.J.Super. at 324, 762 A.2d 305. As a result, the rule amendments are to be applied retrospectively unless, as Feuchtbaum indicated, "vested rights are not thereby disturbed." 59 N.J. at 172, 280 A.2d 161. Here, no rights vested by the time the rule was amended. When the rule was amended, the judgment entered by the trial judge was intact and awaiting our review; at that moment, Kas had no expectation of an allowance of fees pursuant *422 to the Rule. It was not until we decided the first appeal that the question of Kas's entitlement to Rule 4:58 fees was reinvigorated; but, by that time, the rule had been amended.
Although the Court's decision in Romagnola, supra, 194 N.J. at 603-04, 947 A.2d 646, not to resolve that question might conjure doubts about retrospective application, we are of the view that the approach most likely to provide clarity to these circumstances requires the application of the version of Rule 4:58 in effect at the time the motion for fees is filed. Starting with the presumption that the existing version of the Rule applies, courts should then consider whether rights had previously vested or whether an injustice would flow that would require, in idiosyncratic circumstances such as those in Romagnola, a different approach.
Even if we are mistaken in this regard, and even if the starting point for examining the problem should be the utilization of the version of the Rule in effect at the time the offer of judgment is made and rejected, which, in this case, would call for application of the 2004 version, we would view this matter as being every bit as idiosyncratic as Romagnola so as to rebut that presumption. Like Romagnola, an offer was made but not accepted, and a verdict rendered (which made irrelevant the offer of judgment, since the verdict exceeded the rejected offer); again, at that point, Kas could not claim a "vested" right to fees pursuant to the Rule. However, an appeal was filed and, while pending, the Rule was amended to its present form. In ruling on the merits of the first appeal, we concluded that the trial judge's determination was erroneous and reduced the size of Ellman's compensatory damages to a figure that was $42.08 less than 80% of the rejected offer and thus raised legitimate questions about the possibility of an allowance of fees in Kas's favor pursuant to the Rule.
Only when we reversed on the merits did the wheel of fortune stop spinning; by that time, the Rule had been amended so as to explicitly provide reasons for the rejection of Kas's anticipated motion for fees. We think  particularly in light of Rule 4:58's many changes as the Court has strived for many years to form a more perfect rule  that there is an inherent unfairness, in the facts of this case, to conclude that the dispute over Rule 4:58 fees, which did not arise until after the rule was amended, should be resolved through the application of the earlier, discarded version of the rule. Accordingly, even if the 2006 amendments to Rule 4:58 should not be retrospectively applied, in adhering to Romagnola's approach for idiosyncratic cases, we conclude that it would be unjust to permit the earlier version of the Rule to apply when it had been amended while this matter was previously on appeal and before the alleged right to fees had ripened.

C
Ellman argues that the current version of the Rule precludes an award in Kas's favor for two reasons. He first argues that the replacement of "verdict or determination" with "monetary judgment," Rule 4:58-3(a), results in a different figure being compared to the rejected offer that exceeds 80% of the offer. In this regard, Ellman specifically focuses on the fact that he was a prevailing party entitled to an award of court costs and that court costs, which were not part of the earlier Rule's "verdict or determination," would be encompassed by what the Rule now refers to as a "monetary judgment." Second, Ellman argues that our reversal of the post-termination commissions claim was the equivalent of a dismissal or "no cause verdict," which would also bar relief under the *423 current version of the Rule. And, third, although Ellman has not raised it, we observe that application of Rule 4:58 is impacted in this case by the presence of other fee-shifting statutes that may have application.

1. What is Included Within A "Monetary Judgment"?

Ellman's argument that the replacement of "verdict or determination" with "monetary judgment" is relevant here is problematic. We agree with his argument that a "monetary judgment" is normally understood as including any court costs taxed as a result of a judgment in favor of the prevailing party, and we agree the rule amendment in this regard is meaningful because the taxation of costs in Ellman's favor would undoubtedly remove the $42.08 gap and increase his "monetary judgment" to an amount in excess of 80% of Kas's offer.[7] But it is noteworthy that no such costs were taxed in Ellman's favor. Instead, when a judgment was entered following our remand, it only awarded Ellman the same $12,774.02 that we concluded was his only entitlement to compensatory damages. In short, on the surface, Ellman's judgment amounts to less than 80% of the rejected offer. Ellman, however, is correct that the question of taxed costs was then premature.
The August 23, 2007 order was interlocutory; there is no evidence to suggest that the judge had certified that monetary award as final. Because taxed costs are fixed at the time final judgment is entered, see Finch, Pruyn & Co. v. Martinelli, 108 N.J.Super. 156, 260 A.2d 259 (Ch.Div. 1969), we agree that the "monetary judgment" that must be compared to the rejected offer of judgment in considering the propriety of a Rule 4:85 allowance has yet to be ascertained.[8]
We note further that the record does not permit us to assume that the court costs that may be awarded to Ellman will close the $42.08 gap. We agree that, in the absence of some other authority, court costs are awarded to the "prevailing party," Rule 4:42-8(a), although such an award is discretionary with the trial court. Hirsch v. Tushill Ltd., 110 N.J. 644, 646, 542 A.2d 897 (1988). At the very least, our holding that the current version of Rule 4:58 applies here precludes any further determination as to whether Kas's application must be denied until the fixing of the amount of Ellman's "monetary judgment."
In addition, although not argued by the parties, in this context the party's entitlement to court costs is not governed by the general approach taken in most cases, but by reference to the SRRA.[9] As discussed later in this opinion, the SRRA permits an award of both counsel fees and court costs in favor of either the sales representative or the principal  and conceivably, in an appropriate case, both. See N.J.S.A. 2A:61A-3. For the reasons more fully explored in our later discussion of the SRRA, we conclude that Ellman is entitled *424 to relief pursuant to N.J.S.A. 2A:61A-3a, due to Kas's unlawful refusal to pay pre-termination commissions in a timely fashion, as required by N.J.S.A. 2A:61A-2. That determination entitles Ellman to an award of "all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs." N.J.S.A. 2A:61A-3a (emphasis added). Since we have found Kas liable for such an award, it remains for the remand judge to determine the appropriate amount of fees and costs to be awarded.
On the other hand, we have also determined that the remand judge should now consider Kas's claim for relief pursuant to the SRRA based on its claim that Ellman frivolously pursued post-termination commissions in this matter. In that regard, the judge will be guided by N.J.S.A. 2A:61A-3b, which incorporates the elements of the frivolous litigation statute, N.J.S.A. 2A:15-59.1, and which, if Kas can prove that Ellman filed or pursued the case frivolously, would entitle Kas to an award of "attorney's fees actually and reasonably incurred by the principal in defending the action and court costs," N.J.S.A. 2A:61A-3b (emphasis added).
Because further proceedings are required with regard to the parties' competing claims for fees and court costs pursuant to the SRRA, we cannot presently predict to what extent the court costs awarded to Ellman  because they might be offset by a similar award in Kas's favor  would increase the monetary judgment, as defined by Rule 4:58, above 80% of the rejected offer.[10]
Accordingly, we cannot at present agree with Ellman that his potential monetary judgment in this case, even when applying the current version of Rule 4:58, would preclude an allowance of fees. However, we need not further consider the matter, because we are satisfied that other aspects of the current version of Rule 4:58 preclude an allowance in Kas's favor.[11]

2. Do the Dismissal and No Cause Limitations Of Rule 4:58 Apply Here?

We agree with Ellman that Rule 4:58-3(c)(1) and (2), which were included within the recent amendments so as to bar an allowance of fees when a claim is dismissed or no caused, are applicable here.
The case, as viewed by the parties, as decided by the trial judge, as examined and disposed of by us in the first appeal, and as it truly exists, demonstrates that Ellman pled and pursued two separate claims. He sought an award of damages based on unpaid pre-termination commissions, which was supported by N.J.S.A. 2A:61A-2, and an award of damages in the form of post-termination commissions, which he claimed were warranted by his version of the parties' oral agreement and supported by common law principles.
As to the first claim, Kas cannot dispute that it was obligated to pay Ellman *425 $12,774.02 within thirty days after Ellman's termination, i.e., no later than April 1, 2004. There is also no dispute that Kas never made that payment despite the requirements of the SRRA; it remains unpaid to this day, more than five years later. That was a liquidated amount that was acknowledged due even before suit was filed and memorialized in a stipulation that was executed by the parties prior to service of the offer of judgment in question. In short, Kas's obligation to Ellman in the amount of $12,774.02 was not a matter in controversy even at the time the suit was filed and certainly not by the time the offer of judgment was served.[12]
What was truly at issue and in dispute was Ellman's claim for post-termination commissions. This claim had questionable legal underpinnings and, although the trial judge found it had merit to some degree, we rejected on appeal Ellman's claim to any compensation other than his pre-termination commissions based upon the terms of the parties' oral contract as found by the trial judge. That decision was the equivalent of a no cause on that claim and requires the application of Rule 4:58-3(c)(1) and (2) to bar Kas's claim for attorney's fees.
We recognize that this holding might be misconstrued by future litigants. That is, we are concerned that our holding might invite similar arguments and that litigants might attempt to avoid the consequences of a rejected offer of judgment by attempting to parse in an unreasonable or illogical fashion. We make no attempt to create a template for all such cases, but instead limit our holding to the particular facts of this case. Ellman had two clearly separate and divisible claims  one that was liquidated, clearly owed, fixed by a definite date, and statutorily based; the other was questionable and hotly contested for many reasons unrelated to the first claim. It is the fact that there was little if any question about Ellman's entitlement to be compensated on the first claim, as compared to the questionable nature of the second, that permits our view that this case consisted of two separate claims  one on which Ellman prevailed and one on which he did not.[13]
In short, in achieving a fair resolution of the dispute concerning the application of Rule 4:85, it is entirely appropriate in this case to view Ellman's counterclaim as embodying two separate and distinct claims.[14] Indeed, the SRRA recognized that cases brought by sales representatives could consist of additional, separate claims other than the claim for commissions due and owing. N.J.S.A. 2A:61A-7 (declaring that "[n]othing in [the SRRA] shall ... preclude *426 a sales representative from seeking to recover in one action on all claims against a principal ...").
The noncontroversial nature of the first and the rejection as a matter of law of the second triggered the limitations contained in Rule 4:58-3(c)(1) and (2), and precluded Kas's application for a fee allowance.

3. Would an Award Pursuant to Rule 4:58 Conflict with the Policies Underlying Another Fee-shifting Statute?

Rule 4:58-3(c)(4) precludes an allowance of fees based upon a rejected offer of judgment when such an award would "conflict with the policies underlying another fee-shifting statute." In Best, we considered this provision when a plaintiff prevailed to some degree on his CEPA[15] and PWA[16] claims, but failed to achieve 80% of a rejected offer of judgment. The majority concluded that Rule 4:58-3(c)(4) does not preclude its application in any case in which an allowance is sought from a prevailing party on a statutory claim that permits the shifting of fees. 402 N.J.Super. at 243, 953 A.2d 775 (holding that "the Rule is not per force inapplicable to all fee-shifting statutes"). Instead, the Best majority held that the policies underlying the fee-shifting statute must be examined and compared to Rule 4:58's policies, 402 N.J.Super. at 245, 953 A.2d 775, and concluded that an allowance pursuant to the Rule could be permitted with regard to a PWA claim, ibid., but not a CEPA claim, id. at 246, 953 A.2d 775.
The application of Rule 4:58-3(c)(4) proves difficult here as well. Again, as we have mentioned, it is appropriate to view Ellman's claims as separate and distinct. In seeking damages based on Kas's failure to provide him pre-termination commissions unquestionably due, Ellman sought to vindicate the statutory right established by the SRRA, and, to aid him in that regard, the Legislature expressly provided a right to counsel fees and costs for a principal's breach of that obligation. As to that claim, the admonition contained in Rule 4:58-3(c)(4) clearly applies and precludes an allowance of fees to the principal who has refused payment of those commissions.
Ellman's claim to damages based on post-termination commissions, however, is not a claim that finds support in the legislative intent of the SRRA. The SRRA is intended to provide an incentive for principals to timely compensate sales representatives what is due them. Principals, however, are not required to pay commissions falling outside their contractual liability to their representatives, and the Legislature revealed no interest in assisting representatives, through fee-shifting, in their pursuit of such claims. Indeed, the SRRA contains a provision that authorizes an award of fees and costs in favor of the principal when a sales representative frivolously files or pursues a claim for compensation. N.J.S.A. 2A:61A-3b.
As a result, application of Rule 4:58 in such circumstances requires a close analysis of the sales representative's claim. Here, Kas's mistake was in submitting an offer of judgment that did not distinguish between Ellman's separate claims. Indeed, had Kas complied with its statutory obligation to timely pay Ellman his earned commissions, N.J.S.A. 2A:61A-2, any further pursuit by Ellman of damages for post-termination commissions would not have had the protection of the SRRA, regardless of Rule 4:58-3(c)(4), and could *427 have rendered him vulnerable to an inadvisable rejection of an offer of judgment.[17]
We, thus, conclude that the particular offer of judgment in this case  in light of the peculiar circumstances  could not support an allowance of fees in light of Rule 4:58-3(c)(4). As we have noted, this particular determination is not dependent upon whether we are obligated to apply the prior version of the Rule. See Best, supra, 402 N.J.Super. at 252-54, 953 A.2d 775 (Stern, P.J.A.D., concurring).

IV
Even though we have determined that Kas is not entitled to an allowance pursuant to Rule 4:58, we recognize that the disposition of cases such as this remains controversial, and may be impacted by the Court's anticipated decision in Best. Thus, we deem it advisable to discuss the judge's quantification of the fees that were awarded. In that regard, we conclude that even if an award of Rule 4:58 fees in favor of Kas was permissible in this case, we would be compelled to vacate the award under review and remand for further proceedings because the judge's findings do not comport with Rule 1:7-4(a) in a number of respects.
First, although the judge correctly referred to Rule 4:42-9(b), which incorporates the factors set forth in Rule of Professional Conduct 1.5, the judge did not analyze for the record the supporting certification and how each factor was met. Instead, the judge merely drew a naked conclusion that all the fees sought were reasonable. That is, after quoting the applicable rule-based factors, the judge then solely said:
Counsel for plaintiff has satisfied the requirements set forth in Rule 4:42-9(b). An Affidavit of Service has been provided to this [c]ourt which states the following: (1) the allowance applied for, the amount of disbursements for which the reimbursement is sought, and the time incurred by counsel for the services rendered.
This is a conclusion, not a finding. Rule 1:7-4(a) requires that a trial judge disclose an analysis of the facts as they apply to the many applicable factors. See Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995).
This leads to the second inadequacy in the judge's decision. Following her conclusion that all the fees sought by Kas were reasonably incurred, the judge considered whether such an allowance "would impose undue hardship" on Ellman, Rule 4:85-3(c)(5),[18] and concluded  again without adequate analysis  that the allowance should be reduced to $218,271.21. The judge's entire opinion in this regard is as follows:
The [c]ourt feels that the allowance that Kas is requesting would impose undue hardship on [Ellman]. The [c]ourt feels *428 a fee of $218,271.21 is reasonable. This number includes all fees and costs up to the date the trial court decision was entered, which was October 12, 2005.
This finding is unsustainable not only because the judge's analysis of the problem is not adequately explained, but also because the judge's conclusory finding incorrectly mixes considerations of undue hardship with the overall reasonableness of the fee sought.
That is, Rule 4:58-3(c)(5) presupposes a reasonable fee will first be fixed, following which the judge may consider whether an award of that fee will constitute an "undue hardship" on the payor; if the answer to the second part of that question is in the affirmative, then the judge has the discretion to reduce the allowance to remove the hardship. Here, the judge drew a cutoff date for any further fees at the date of the trial judge's decision on the merits; the parties concede there is nothing in the record to indicate Ellman's net worth or anything else that might shed light on whether such an award would cause an "undue hardship" on Ellman.
Accordingly, even if we were to conclude that Kas was entitled to a Rule 4:58 allowance in this matter, we would nevertheless vacate the award and remand for further proceedings on this point. The judge's conclusory decision fails to comport with the requirements of Rule 1:7-4(a), which imposes the obligation  for the benefit of the litigants, attorneys and the appellate court  to "state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570, 417 A.2d 15 (1980). "Naked conclusions" do not suffice. Ibid. See also Shulas v. Estabrook, 385 N.J.Super. 91, 96, 895 A.2d 1234 (App.Div.2006).

V
Unfortunately, our resolution of the Rule 4:58 issues does not end the matter. As we have noted, Ellman contends that the remand judge erred when she denied his application for an award of counsel fees pursuant to the SRRA. In addition, Kas claims alternate grounds for an award of fees, namely, the SRRA and frivolous litigation statute. We conclude that the judge was mistaken in denying Ellman's application and that he is in fact entitled to an award of fees based upon Kas's refusal to timely pay his pre-termination commissions. However, even though we conclude that Ellman is entitled to fees pursuant to the SRRA, that determination does not preclude Kas's claim for counsel fees on SRRA grounds.
Again, we view Ellman's action as consisting of two separate and distinct claims. The parties' claims to fees based on the SRRA should be similarly approached. While it is beyond dispute that Kas failed to honor Ellman's entitlement to pre-termination commissions, which warrants an award in favor of Ellman pursuant to N.J.S.A. 2A:61A-3a, Ellman's claim to post-termination commissions was ultimately found wanting and raises the question of whether it was frivolous within the meaning of N.J.S.A. 2A:61A-3b. In short, Ellman's entitlement to fees on his pre-termination commission claim does not exclude his liability for fees in pursuing his post-termination commission claim.

A
We briefly explain why the remand judge was mistaken in refusing to award counsel fees to Ellman pursuant to N.J.S.A. 2A:61A-3a. The judge's decision on this point, which we quoted in its entirety earlier, reveals that the judge found no breach of N.J.S.A. 2A:61A-3a either because suit was filed or because the amount was later bonded when the matter was on appeal.
*429 The filing of suit is not an excuse for failing to comply with the SRRA. And the fact that a principal has either escrowed or bonded the fund at some stage of the suit for future disposition is also not sufficient. The statute requires that commissions due are to be paid shortly after the relationship has ended. A promise to pay and an expression of an ability to pay is not the same thing as payment. The statute requires payment.
Clearly, the Legislature was motivated by the same concern for sales representatives that led to the adoption of the Wage Payment Law. See N.J.S.A. 34:11-4.1 to -4.12. These types of laws have been liberally construed in order to fulfill their "humanitarian and remedial" purposes. See, e.g., Yellow Cab Co. v. State, 126 N.J.Super. 81, 86, 312 A.2d 870 (App. Div.1973), certif. denied, 64 N.J. 498, 317 A.2d 711 (1974). Like the Wage Payment Law, the SRRA was intended to provide an incentive for the rapid payment of commissions due and owing and to ensure that sales representatives would not have their remedies reduced by the cost of securing relief, by rendering principals liable for counsel fees and costs actually and reasonably incurred, as well as court costs, upon proof of a violation of the SRRA. N.J.S.A. 2A:61A-3a.[19]
Here, Kas provided no legitimate reason for withholding Ellman's pre-termination commissions. On remand, the judge must determine what counsel fees and costs are due to Ellman as a result of Kas's unlawful withholding of the stipulated pre-termination commissions of $12,744.02. N.J.S.A. 2A:61A-3a entitles Ellman to "all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs." This requires an analysis of the fees incurred by Ellman in connection with this aspect of the suit. We remand for that purpose.

B
As we have emphasized throughout, the most appropriate way of examining this action is to view it as including two separate and distinct claims. On the first, as we have observed, Ellman was unquestionably entitled to $12,744.02 in pre-termination commissions at the time his relationship with Kas was terminated; the parties stipulated to the amount and Kas never provided an adequate or legitimate excuse for withholding payment, thus entitling Ellman to the fees and costs incurred in his pursuit of relief on that claim.
The second part consists of Ellman's claim for post-termination commissions. He succeeded in convincing the trial judge of his entitlement to an award, but we found no legal basis for such an award in the first appeal and reversed. Although we have concluded that Rule 4:58 fees are not available to Kas as a result of that determination, that holding does not necessarily foreclose Kas's claim for fees based upon N.J.S.A. 2A:61A-3b, which declares that "[w]here the court determines that an action brought by a sales representative against a principal pursuant to this section is frivolous, pursuant to [N.J.S.A. 2A:15-59.1], the sales representative shall be liable to the principal for attorney's fees actually and reasonably incurred by the principal in defending the action and court costs."
Kas correctly argues that the remand judge never reached this issue, as well as its claim for fees based upon the frivolous litigation statute, N.J.S.A. 2A:15-59.1. *430 Now that we have found that Kas is not entitled to fees based upon Rule 4:58, it is appropriate to consider whether N.J.S.A. 2A:61A-3b provides a basis for an award.[20] On remand, the judge must consider whether Ellman frivolously filed or pursued his claim for post-termination commissions. If so, the judge must ascertain the amount of fees actually and reasonably incurred in defending against that claim.

C
In parting ways from our holding on this point, the dissenting opinion suggests a less-nuanced view of N.J.S.A. 2A:61A-3. Our colleague agrees Ellman is entitled to a fee award pursuant to N.J.S.A. 2A:61A-3a, because Kas withheld Ellman's pre-termination commissions in violation of the SRRA, but she concludes that Ellman's success on that claim necessarily precludes an award of fees in Kas's favor pursuant to N.J.S.A. 2A:61A-3b; in short, our colleague asserts that Ellman's suit cannot be labeled frivolous so long as he succeeded in obtaining relief on one claim even if his other claim was frivolous, caused damage to Kas, and had the highly undesirable effect of diverting judicial resources from more worthy cases.
As we understand the dissenting opinion, the word "action" contained in N.J.S.A. 2A:61A-3a refers to the same "action" contained in N.J.S.A. 2A:61A-3b. That is, one subsection of the fee-shifting statute declares that "[a] principal who violates or fails to comply with [N.J.S.A. 2A:61A-2] shall be liable to the sales representative for ... all attorney's fees actually and reasonably incurred by the sales representative in the action ...," N.J.S.A. 2A:61A-3a (emphasis added), and the other subsection declares that a principal, such as Kas, is entitled to an award of fees in "defending the action" when found to be frivolous, N.J.S.A. 2A:61A-3b (emphasis added). Concluding that the word "action" in these subsections refers to the same thing, the dissenting opinion asserts that the "action" cannot both produce a compensatory award in favor of the sales representative and still be found frivolous.
Although our colleague's view appears plausible in theory, it overlooks the circumstance presented here  the entirely unremarkable occurrence of a party asserting multiple claims in the same suit, one of which is meritorious and the other without merit and potentially frivolous. One fee-shifting provision in N.J.S.A. 2A:61A-3 permits a fee award in favor of a sales representative when successful; the other permits a fee award in favor of a principal when defending against a frivolous claim. The point upon which we and our colleague disagree is whether both circumstances can occur in the same case; our colleague apparently thinks not, but we believe it is self-evident that a suit can incorporate both a meritorious claim and a frivolous claim, and that such an occurrence does not hamstring the SRRA's fee-shifting provisions or warrant a preference in favor of the sales representative. Rather, in such a circumstance, we conclude that N.J.S.A. 2A:61A-3 favors the issuance of fee awards to both parties.
In applying our interpretation of the statute, both parties' fee claims would be quantified; Ellman would be awarded *431 the fees reasonably incurred in the filing and pursuit of his pre-termination claim, and Kas, if it can prove frivolity, would be awarded the fees reasonably incurred in defending against the post-termination claim. One award would offset the other and the net would be due the party whose fee award was greater. This would result in an equitable resolution of the competing claims. The question is whether such a resolution falls within the statute's intent. We think it does.
In our colleague's view, a suit such as this would present two competing claims for fees, only one of which  the sales representative's request  could succeed. That is, the dissent asserts that Ellman's claim for fees would trump Kas's because Ellman proved Kas's violation of the SRRA and, for that sole reason, Ellman's claim could not be deemed frivolous. We reject this view. Were we to agree with our colleague, Ellman's relatively simple and successful claim for pre-termination commissions would then have the disconcerting effect of inviting Ellman to engage with impunity in a highly expensive and time-consuming fight over post-termination commissions without consequence. In essence, the dissent's view would allow no redress for Kas even if it were ultimately shown that Ellman filed and pursued a frivolous claim for post-termination commissions.
Giving due regard for the language of the statutes and the clear intent of the fee-shifting statute contained in the SRRA, we conclude that the most sensible interpretation of both subsections of N.J.S.A. 2A:61A-3 permits our courts to view the word "action" as referring to a single claim and not the entire collection of claims. Only in so interpreting N.J.S.A. 2A:61A-3 can there be, in a case such as this  with its twin, independent claims  a fulfillment of both of the Legislature's clear mandates. The sales representative would be awarded fees upon succeeding on a claim based on N.J.S.A. 2A:61A-2, thereby vindicating the legislative intent to deter principals from withholding owed commissions, and the principal would be awarded fees in defending against a frivolous claim, thereby vindicating the intent to deter a sales representative's frivolous claims. Otherwise, in accepting and applying our colleague's nonmalleable interpretation of the word "action" in a suit containing multiple, distinct claims and defenses that produce mixed results, the legislative goal revealed by N.J.S.A. 2A:61A-3b  to deter sales representatives from filing and prosecuting frivolous claims  would go unfulfilled, and sales representatives would be provided with a license to assert and prosecute frivolous claims without fear of any consequence.
It is fair to conclude from the legislative history marshaled by our colleague that the Legislature did not focus on the particular circumstances presented by cases such as this. Instead, the Legislature may very well have presupposed, when it crafted N.J.S.A. 2A:61A-3, that cases would generally consist of a single suit with a single SRRA claim. In the one-suit/one-claim scenario, the predicate for an award in favor of the sales representative pursuant to N.J.S.A. 2A:61A-3a would necessarily preclude a finding that the same claim was frivolous, and vice versa; our colleague's interpretation fits comfortably in that situation, but proves inadequate and inconsistent with the twin goals of the fee-shifting provisions in gray areas, such as when a suit presents multiple SRRA claims.
As is often the case when identifying a particular area in need of remediation, the Legislature here used broad strokes in enacting standards to govern suits between sales representatives and principals, *432 and made no attempt to express what ought to occur in every seen and unseen scenario. This is certainly not uncommon. Legislatures often enact broad codes of conduct, leaving it for the courts to apply those principles to the many variations that may occur from day to day. When a situation is presented that is not clearly answered by the very language of a statute, a court is left to interpret the statute in a sensible fashion  its polestar is fixed not just by the statute's words, but by its purposes and goals as well. In such instances, it cannot be said that we legislate or rewrite statutes; we instead fill the interstices left in the statute in order to render the complete and just relief intended by the legislation.
In undertaking this often difficult task, we are not unmindful that more than one plausible approach may be presented. This does not mean, however, that we must simply attribute dictionary meanings to the words employed by the Legislature. Both the statute's words and its goals must be considered. Having examined both, we reject our colleague's interpretation of the statute because it permits inequitable and undesired resolutions of fee disputes in cases containing multiple, independent claims that would not honor the statute's clear intentions. DiProspero v. Penn, 183 N.J. 477, 493, 874 A.2d 1039 (2005). Although our colleague generally relies upon an established understanding of what constitutes an "action" when applied in other circumstances, see, e.g., Rule 4:2-1, we are not restricted to that broad understanding when the legislative intent suggests a more flexible approach. As a result, even when the Legislature has employed terms possessing an accepted meaning, courts should follow a different, plausible interpretation in order to embrace and enforce the statute's substance and not its mere form. New Jersey Democratic Party v. Samson, 175 N.J. 178, 191-94, 814 A.2d 1028, cert. denied sub nom., Forrester v. New Jersey Democratic Party, 537 U.S. 1083, 123 S.Ct. 673, 154 L.Ed.2d 582 (2002).
In short, the word "action" should not be limited to the definition ascribed by our colleague. The Legislature recognized that a sales representative could pursue additional claims against its principal, N.J.S.A. 2A:61A-7, and, therefore, did not likely adopt the theory, urged in the dissent, that the "action," which forms the predicate for a fee award, refers only to the collection of all SRRA claims in the suit[21] and that an award in favor of the sales representative precludes an award in favor of the principal in more complex circumstances, such as presented by this appeal. Here, Ellman pursued two separate and independent claims, which should be viewed as separate "actions" for purposes of applying N.J.S.A. 2A:61A-3a and N.J.S.A. 2A:61A-3b to the parties' competing fee requests. In interpreting these fee-shifting provisions of the SRRA in this manner, we do not rewrite the statute but instead interpret the statute in order to foster N.J.S.A. 2A:61A-3's dual goals.[22]
Reversed and remanded.
*433 C.L. MINIMAN, J.A.D., concurring in part and dissenting in part.
I disagree with the majorities' conclusion that Kas Oriental Rugs, Inc. (Kas) may be entitled to an award of attorneys' fees and costs under N.J.S.A. 2A:61A-3(b) even though Ellman has succeeded in part on his counterclaim for unpaid commissions under the Sales Representatives' Rights Act (the SSRA), and is himself entitled to such an award. Ante at 565, 972 A.2d at 429-30.
In construing a statute, we search for the Legislature's intent and the "statute's language is ordinarily the `surest indicator' of that intent." Frugis v. Bracigliano, 177 N.J. 250, 280, 827 A.2d 1040 (2003) (quoting Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998)). We read "the language employed in its ordinary and common significance." Lane v. Holderman, 23 N.J. 304, 313, 129 A.2d 8 (1957) (citations omitted). Further, we "read [the statutory words] in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (citing Chasin v. Montclair State Univ., 159 N.J. 418, 426-27, 732 A.2d 457 (1999)).
The SSRA, enacted as L. 1990, c. 93, and currently codified at N.J.S.A. 2A:61A-1 to -7, was introduced in the Assembly on February 5, 1990, by Assemblymen Cinimi, Patero, and Watson. In the statement accompanying the bill, the Assembly Economic Growth, Agriculture, Tourism and Coastal Protection Committee stated that the bill conformed to "a model bill proposed by the Bureau of Wholesale Sales Representatives." Assemb. Economic Growth, Agriculture, Tourism & Coastal Protection Comm., Statement to Assembly Bill No. 2897, at 1 (Feb. 8, 1990). That model bill is no longer available, although the one proposed as of 1998 made the principal liable for all amounts due the sales representative, plus additional damages not to exceed three times the amount of commissions due. See Bureau of Wholesale Sales Representatives, Model Bill for Prompt Payment of Post-Termination Commissions to Sales Representatives, reprinted in John R.F. Baer, Sales Representative Law Guide In One Volume, ¶ 7555, at 9762 (1998). It also provided as follows:
If the sales representative recovers any amount of commissions, then the sales representative shall also recover all attorney's fees reasonably incurred by the sales representative in the action, and court costs. Where the court determines that an action brought by a sales representative against a principal under this article is frivolous, the sales representative may be liable to the principal for attorney's fees actually and reasonably incurred by the principal in defending the action and court costs.
[Ibid.]
As introduced, Assembly Bill No. 2897 provided in section 3 as follows:
a. A principal who violates or fails to comply with the provisions of section 2 of this act shall be liable to the sales representative for all amounts due the *434 sales representative plus exemplary damages in an amount not to exceed two times the amount of commissions due the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.
b. Where the court determines that an action brought by a sales representative against a principal pursuant to this section is frivolous, pursuant to P.L. 1988, c. 48 (C. 2A:15-59.1), the sales representative shall be liable to the principal for attorney's fees actually and reasonably incurred by the principal in defending the action and court costs.
[Statement to Assembly Bill No. 2897, supra, at 1.]
Thus, the proposed legislation contained the concept of a sales representative who recovered any amount of commissions being entitled to recover his attorney's fees and court costs by providing for same where a principal "violates or fails to comply with the provisions of section 2 of this act." Ibid. It is only where the action under the SSRA is frivolous that the proposed legislation and the model bill as of 1998 permitted the principal to recover such expenses.
When the SSRA was reported out of committee by the Senate Labor, Industry and Professions Committee, it "amended the bill to delete the provision concerning exemplary damages in the penalty section of the bill." Senate Labor, Industry & Professions Comm., Statement to Assembly Bill No. 2897, at 1 (Apr. 26, 1990). As enacted, the SSRA provided:
a. A principal who violates or fails to comply with the provisions of section 2 of this act shall be liable to the sales representative for all amounts due the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.
b. Where the court determines that an action brought by a sales representative against a principal pursuant to this section is frivolous, pursuant to P.L. 1988, c. 48 (C. 2A:15-59.l), the sales representative shall be liable to the principal for attorney's fees actually and reasonably incurred by the principal in defending the action and court costs.
[L. 1990, c. 93, § 3.]
The Legislature amended the SSRA in 2007 to be effective on January 13, 2008, to provide for "exemplary damages in an amount of three times the amount of commissions owed to the sales representative." See L. 2007, c. 289, § 3. It made no other change to N.J.S.A. 2A:61A-3, although it did amend other sections of the SSRA. See L. 2007, c. 289, § 3. Thus, the SSRA still provides that "[a] principal who violates or fails to comply with the provisions of section 2 of this act" is liable to the sales representative for "all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs." Ibid. It is only where the court determines that "an action brought by a sales representation against a principal pursuant to this section is frivolous," N.J.S.A. 2A:61A-3(b) (emphasis added), that the court may award attorney's fees and court costs to the principal.
At the time that the SSRA was first adopted and still today, our Frivolous Lawsuit Statute provided in pertinent part as follows:
A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counter-claim, *435 cross-claim or defense of the nonprevailing person was frivolous.
[N.J.S.A. 2A:15-59.1a(1).]
It further provided a test for determining frivolity:
In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
[N.J.S.A. 2A:15-59.1b.]
The Legislature was obviously fully aware of the provisions of N.J.S.A. 2A:15-59.1, having cross-referenced it. D'Annunzio v. Prudential Ins. Co. of Am., 383 N.J.Super. 270, 279, 891 A.2d 673 (App. Div.2006) (courts interpreting statutes "assume the Legislature is cognizant of its laws"), aff'd as modified, 192 N.J. 110, 927 A.2d 113 (2007). If the Legislature intended that both the sales representative and the principal could recover attorney's fees and court costs against each other if some claims for commissions, but not all, were frivolous, it would not have used "[a] principal who violates or fails to comply with the provisions of section 2" as the trigger for a sales representative's recovery, only permitting the principal to recover such fees "[w]here the court determines that an action brought by a sales representative against a principal pursuant to this section is frivolous." It would have tracked the language of the Frivolous Lawsuit Statute and employed language such as: "Where the court determines that a complaint, counterclaim, cross-claim, claim or defense of the sales representative was frivolous, the principal may recover attorney's fees and court costs."
Because the Legislature did not do so when it was obviously aware of the concept of portions of an action as opposed to the whole of the action, I cannot subscribe to the notion that Kas may be liable to Ellman for attorney's fees and court costs for violating the SSRA and at the same time recover attorney's fees and court costs from him because some piece of his SSRA action was frivolous. This was clearly remedial legislation, entitled to a liberal construction in favor of the protected class, here sales representatives, Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995) ("Where the legislature's intent is remedial, a court should construe a statute liberally."); see Palisades Safety & Ins. Ass'n v. Bastien, 175 N.J. 144, 148, 814 A.2d 619 (2003) ("As remedial legislation that is protective of automobile accident victims, the PIP statute is given liberal construction to provide such victims with the `broadest possible coverage.'" (citations omitted)); Found. for Fair Contracting, Ltd. v. N.J. State Dep't of Labor, Wage & Hour Compliance Div., 316 N.J.Super. 437, 446, 720 A.2d 619 (App. Div.1998) ("We have previously recognized that the Prevailing Wage Act is remedial legislation entitled to liberal construction...."), and that purpose will be subverted with the interpretation of N.J.S.A. 2A:61A-3(b) adopted by the majority.
Although my colleagues divide this SSRA action into two classes of claims, pretermination commissions and post-termination commissions, the claims for commissions were all based on work done by Ellman prior to the termination of his *436 sales-representative relationship with Kas. The issue was whether Ellman was entitled to commissions on sales that had not yet been booked by Kas as "in-house" before the effective date of his termination or whether he was entitled to commissions on other sales he brought to Kas but which were not yet booked as "in-house." This SSRA action could just have easily related to commissions on sales that were all "in-house" but where Kas disputed that Ellman was the sales representative entitled to the commission on all of the sales. In either case, I do not see the SSRA as being so parsimonius as to put sales representatives in the position of foregoing all but the clearest entitlements to unpaid commissions in order to avoid the risk of losing on some claims and having the commissions to which they were rightfully entitled wiped out by the principal's counsel fees.
It seems to me that this case is a prime example of why principals should only be permitted to recover counsel fees and costs of suit where the entire SSRA action lacked merit. Here, Kas has never to this day paid the commissions that were "in-house" on the date of Ellman's termination. In fact, it made a claim for an offset against those commissions, one on which it did not prevail. What it should have done, but never has, was simply pay Ellman commissions on "in-house" sales before suit. Had it done so, and Ellman started an action under the SSRA for such commissions, he might well have been at risk of an award under N.J.S.A. 2A:61-3b. What Kas did instead was force Ellman to trial to recover the full $12,774.02 that Kas stipulated was "in-house" plus his attorney's fees and costs (which were not included as a recoverable item in Kas's offer for judgment). Having done so, it should not be in a position to wipe out the sums Ellman is entitled to recover with a quantum of counsel fees (over $250,000) that no reasonable sales representative would pay to recover such a comparatively small sum. The result is not consistent with the remedial purposes of the SSRA.
I respectfully dissent in part, concurring in the balance of the majority opinion.
NOTES
[1] Although a defendant to this action, Ellman is actually the claimant in the offer of judgment analysis. Plaintiff Kas Oriental Rugs, Inc. (Kas) commenced this action but sought only a declaratory judgment as to what it owed Ellman. It was Ellman's counterclaim that was at issue at trial.
[2] The trial judge resigned in the interim.
[3] The first paragraph of N.J.S.A. 2A:61A-2 was amended in 2007 to become effective January 13, 2008; it now states:

When a contract between a principal and a sales representative to solicit orders is terminated, the commissions and other compensation earned as a result of the representative relationship and unpaid shall become due and payable within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later.
The Legislature has, thus, eliminated the preexisting distinction between circumstances that required payment within thirty days and those that required payment within seven days.
[4] N.J.S.A. 2A:61A-3a now states that upon violating or failing to comply with N.J.S.A. 2A:61A-2, the principal "shall be liable to the sales representative for all amounts due the sales representative, exemplary damages in an amount of three times the amount of commissions owed to the sales representative and all attorney's fees actually and reasonably incurred by the sales representative in the action and court costs" (emphasis indicates the language added by the Legislature's amendment, effective January 13, 2008).
[5] The judge rounded off Kas's claim of $511,877.23.
[6] Ellman argued in the trial court that, if the old rule is to be applied, he should still not be held liable because the "verdict or determination," which he would define by the trial judge's original award of pre- and post-termination commissions exceeded the offer. We reject this because it would permit the important policies represented by the offer of judgment rule to be negated by an unsound "verdict or determination." The proper way of ascertaining the amount of Ellman's "verdict or determination" is by reference to the award following our review and disposition of the appeal.
[7] Ellman asserts that a taxing of his costs against Kas would include, at the very least, his filing fee, which would more than cover the $42.08 gap and raise his "monetary judgment" above the critical 80% mark.
[8] We observe, as Ellman recognizes, that a "monetary judgment" in this setting does not encompass either an award of counsel fees or prejudgment interest, Rule 4:58-3(b), although it does encompass taxed costs.
[9] The direction in Rule 4:42-8(a) that costs are allowable to the prevailing party is secondary to what might be "otherwise provided by law." Because the SRRA has application here, the court's imposition of an award of costs is first considered in light of its provisions.
[10] The amount of court costs that might be taxed is also not presently predictable. Although N.J.S.A. 22A:2-8 outlines the type of expenses that may be taxed as costs, other areas are left to the trial court's discretion. See Hirsch, supra, 110 N.J. at 646, 542 A.2d 897; Buccinna v. Micheletti, 311 N.J.Super. 557, 561, 710 A.2d 1019 (App.Div.1998); A.J. Tenwood Assocs. v. Orange Senior Citizens Housing Co., 200 N.J.Super. 515, 531, 491 A.2d 1280 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985); Finch, Pruyn & Co., supra, 108 N.J.Super. at 159, 260 A.2d 259.
[11] In light of the novelty of the case, and the uncertainty generated because Best has not yet been decided by our Supreme Court, we have deemed it advisable to address all the issues raised by the parties, and one raised by us, for the sake of completeness.
[12] At trial, Kas contended that it was entitled to an offset from that amount of $4375. The trial judge rejected that contention and, on appeal, we deferred to that finding. 394 N.J.Super. at 285, 926 A.2d 387.
[13] In defining the scope of our holding in this regard, it is perhaps helpful to view Ellman's claims as we would view what constitutes an interlocutory award that could be permissibly certified as final. Had Ellman sought and obtained summary judgment on his claim for pre-termination commissions, he would undoubtedly have been entitled to have that award certified as final, pursuant to Rule 4:42-2, so that he could proceed to collect upon it. This represents as good a test as any for determining when, in similar circumstances, Rule 4:58-3(c)(1) and (2) would have application.
[14] Indeed, in so viewing Ellman's contentions, it seems clear that the offer of judgment was purely tactical. It put Ellman to the test of accepting an offer, which mostly invited Ellman to accept an award of damages to which he was unquestionably entitled while essentially requiring him to forego SRRA fees and costs and his claim to post-termination commissions, or run the risk of Kas's fee award should the second aspect of his claim fail.
[15] The Conscientious Employee's Protection Act, N.J.S.A. 34:19-1 to -14.
[16] The Prevailing Wage Act, N.J.S.A. 34:11-56.25 to -56.47.
[17] We, of course, realize that when the offer of judgment in this case was made and rejected, Rule 4:58-3(c)(4) was not in existence. However, we agree with the view expressed by Judge Stern in his concurring opinion in Best that, even though not expressed, prior versions of the rule implicitly incorporated that notion and the later adoption of Rule 4:58-3(c)(4) was meant only to clarify existing offer-of-judgment principles. 402 N.J.Super. at 252-54, 953 A.2d 775. Accordingly, when Kas served its offer of judgment in this case it should have understood the likelihood that a later application for fees could run counter to the policies of the SRRA.
[18] We note that this provision is contained in the current version of Rule 4:58-3, not in the former. Although the judge did not explain why she had decided to apply the newer version of the rule, we agree, for the reasons we have already expressed, that the hardship provision contained in the new rule was applicable to Kas's application.
[19] As we noted earlier, N.J.S.A. 2A:61A-2a was recently amended to provide sales representatives with the right to exemplary damages in the amount of three times the amount of commissions due. We offer no view as to whether this statute has application here.
[20] As we have noted, Kas relies upon both the SRRA and the frivolous litigation statute. Because the former expressly incorporates the requirements of the latter, the claims under these statutes are mutually exclusive. If Kas's SRRA fee claim succeeds it is because Kas has demonstrated that the frivolous litigation statute was violated, and if Kas cannot demonstrate that the frivolous litigation statute was violated, then its SRRA claim must also fail.
[21] We note that our colleague acknowledges that limits should be imposed on "action" as used in N.J.S.A. 2A:61A-3, interpreting the word as referring only to the collection of claims brought pursuant to the SRRA and not encompassing other claims that a sales representative might also assert against a principal. This approach seems to us to belie the literal interpretation otherwise suggested by our colleague.
[22] In asserting that a sales representative's successful SRRA claim precludes a fee award to a principal based on N.J.S.A. 2A:61A-3b, our colleague also relies upon the liberal construction to be given to the Legislature's desire to provide a remedy for sales representatives when owed commissions are withheld. N.J.S.A. 2A:61A-3, however, already provides an advantage to the sales representative without the crafting of an interpretation that provides even greater weight to the sales representative's successful claim for fees than the principal's equally sound fee claim. That is, the sales representative's burden of proof in obtaining a fee award is less onerous than the principal's burden; the sales representative is entitled to fees merely by succeeding on a claim based upon N.J.S.A. 2A:61A-2; on the other hand, the principal has no right to fees when defeating a sales representative's claim unless the principal can also show that the sales representative's claim was frivolous.