**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5337-16T1

EMILY B. STANSBURY,

    Plaintiff-Respondent,

v.

JOHN M. STANSBURY,

    Defendant-Appellant.

_____

Argued October 15, 2018 – Decided November 29, 2018

Before Judges Haas, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0736-98.

AllynMarie Smedley argued the cause for the appellant (Smedley & Lis, attorneys; AllynMarie Smedley, on the briefs).

Emily B. Stansbury, respondent, argued the cause pro se.

PER CURIAM

Defendant John Stansbury appeals from a Family Part order modifying his permanent alimony obligation based upon his desire to retire. The trial judge issued a decision (1) modifying defendant's permanent alimony obligation from $250 weekly to $150 weekly, and (2) reducing defendant's obligation to carry life insurance from $142,125 to $25,000. We reverse in part and remand for a plenary hearing.

Plaintiff and defendant were married on June 25, 1972, and divorced on June 19, 1999, after a twenty-eight-year marriage. The marital settlement agreement ("MSA") provided that defendant would pay plaintiff permanent alimony of $250 per week. At the time of the agreement, defendant made $52,000 per year. Plaintiff also received a portion of defendant's pension and a portion of defendant's savings and investment plan. The MSA also obligated defendant to carry life insurance to secure his obligations.

On March 31, 2017, defendant filed to terminate his alimony and life insurance obligations to plaintiff because he wanted to retire. Defendant certified that he was seventy-two years old, has diabetes, and had undergone heart bypass surgery when he was in his fifties. Defendant was a professional pipe-fitter by trade, and he certified that he can no longer perform this strenuous work.

A-5337-16T1

Defendant further certified that he has both a pension and Savings and Investment plan from DuPont Merck, where he worked from 1973 to approximately 2003. This pension was equitably distributed as part of the parties' divorce. Defendant states that his DuPont pension, which pays him $9,156 a month, "ha[d] been distributed under equitable distribution, [and] it is [his] understanding that this is not income for purposes of alimony calculations." Defendant's present job at Brown and Root does not offer a pension.

On June 1, 2017, plaintiff filed a cross-motion opposing the termination of permanent alimony. Plaintiff certified that she lives on a monthly budget of $3,246 and depends on defendant's alimony to meet that budget. Plaintiff is a home health aide who works approximately twenty hours per week. Plaintiff previously worked as a certified nursing assistant (CNA), but alleges she is no longer able to do so after suffering shoulder injuries in 2012. Plaintiff certified that her monthly earnings come from social security benefits, a pension she acquired after the divorce, and monthly income, totaling $2,281 after deductions for Medicare and taxes.

Plaintiff asserts that defendant's obligation should not be terminated because he will net $51,628[1] annually after retirement – $26,465 in social security benefits,

---

[1] The total of these amounts is actually $51,528.

A-5337-16T1

$9,055 in pension benefits, and $16,008 in military benefits – which is almost the same income as the $52,000 he made before retirement. Plaintiff also alleges that defendant is concealing assets, particularly from a home that he and his former wife owned. She claims that defendant has had a desk job since 2002, which she claims undermines the credibility of defendant's argument that he cannot work.

On June 30, 2017, the parties appeared for oral argument. That same day, the Family Part judge issued a decision granting defendant's motion in part, reducing his alimony obligation to $150 per week, retroactive to March 31, 2017, and reducing his life insurance obligation to $25,000.

In so ruling, the trial judge considered the factors enumerated in N.J.S.A. 2A:34-23(j)(3). N.J.S.A. 2A:34-23(j)(3) is triggered upon the actual or contemplated retirement of the supporting spouse when the parties have an existing agreement. Specifically, Section (j)(3) provides that where there is an existing final order or enforceable written agreement establishing an alimony obligation prior to the effective date of an amendment to the statute in September 10, 2014, "the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age." "Full retirement age" means the age at which a person is eligible to receive full retirement benefits under section 216 of the federal Social Security Act, 42 U.S.C § 416. N.J.S.A. 2A:34-23(n).

Once the court determines that the obligor has reached full retirement age, the court may equitably weigh a series of additional factors specified in the statute to determine whether alimony should be terminated, modified, or left intact.  In making its determination, the court may consider various points, including but not limited to the ability of the obligee to have saved adequately for retirement.  This court has previously found that the amended N.J.S.A. 2A:34-23(j)(3) "elevates the ability of the obligee to have saved adequately for retirement . . . setting it apart from other considerations and requiring its explicit analysis."  Landers v. Landers, 444 N.J. Super. 315, 324 (App. Div. 2016).

The trial judge acknowledged that she was required to give a specific analysis to this point and noted that she had "heavily considered the [p]laintiff's inability to have adequately saved for retirement."  The judge concluded that it was "unlikely" that plaintiff had the ability to adequately save for retirement.

> The [p]laintiff certifies that she receives a gross of $1,178.90 monthly in Social Security ($1,074 net), $575 per month from her pension (acquired after the marriage), for a total gross income of $2849.00. Plaintiff also receives $13,426 gross annually ($11,922 net) from her part-time job as a certified home health aide.  Plaintiff's total net income is approximately $2581 per month, excluding spousal support.  Plaintiff does not report any income from her marital share of defendant's pension.  As such, the pension may have been liquidated and spent down to meet expenses or perhaps reinvested, [p]laintiff offers no explanation.

5

The Court infers that the marital pension may have replaced her lost income for 2014 while in treatment for cancer.

… It is unlikely [p]laintiff had the ability to save for retirement, as she currently has no savings, and was out of work for a year due to cancer treatments.

The court also considered the additional statutorily mandated factors to determine whether defendant had demonstrated by a preponderance of the evidence that modification or termination of alimony was appropriate:

(a) The age and health of the parties at the time of the application;
(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;
(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;
(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;
(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;
(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and
(h) Any other relevant factors affecting the parties' respective financial positions.

A-5337-16T1

[N.J.S.A. 2A:34-23(j)(3).]

As to factor (a), the judge found that both parties have significant health issues and that defendant was seventy-two and plaintiff was seventy-one at the time of the hearing. She found that this weighed in favor of granting defendant's application. As to factors (b) and (c), the judge found that seventy-two was a generally accepted retirement age even though there was no mandatory retirement age for defendants' job because defendant was "beyond any date where continued employment would increase his retirement benefits." This factor, the judge found, also weighed in favor of defendant's application. Concerning factor (d), the judge found that defendant's motive for retiring was reasonable and weighed in favor of his application because he was not physically capable of fulfilling strenuous requirements of his pipefitting job, and he did not receive a pension from his current company.

The judge also considered defendant's ability to maintain support payments pursuant to factor (g). She slightly reduced defendant's submitted budget because she felt that some of his expenses were too high. In contrast, she did not alter plaintiff's "bare bones" budget. She found that the "financial impact of the termination of alimony upon [plaintiff] would be severe[,]" a factor that weighed against granting defendant's application.

7

The trial judge also granted in part defendant's motion to terminate life insurance, and reduced the amount defendant was obligated to carry from $142,125 to $25,000. The trial court also denied both parties' motions for counsel fees. The trial judge ordered (1) both parties to exchange lifetime social security earnings statements within thirty days; (2) defendant to sign an authorization for plaintiff to inquire into whether he can obtain reasonably priced life insurance through his pension; and (3) plaintiff to provide defendant's counsel her certification regarding the disposition of her share of defendant's employment-based pension within thirty days.

On appeal, defendant argues that because the trial judge did not conduct a plenary hearing, her modifications to his alimony and life insurance obligations are not supported by any substantial credible evidence in the record and cannot be sustained. Defendant also argues that the trial court erred in including his pension in computing his income. We will address these arguments in reverse order.

N.J.S.A. 2A:34-23(j)(4) provides, "[t]he assets distributed between the parties at the time of the entry of a final order of divorce or dissolution of a civil union shall not be considered by the court for purposes of determining the obligor's ability to pay alimony following retirement." "When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the trial court shall not consider

8

income generated thereafter by that share for purposes of determining alimony." Innes v. Innes, 117 N.J. 496, 505 (1990). N.J.S.A. 2A:34-23(b) provides "[w]hen a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony." In Steneken v. Steneken, 367 N.J. Super. 427, 439, 443 (App. Div. 2004), this court affirmed the decision of the trial court prohibiting "double counting" of pension assets. We found that "a retiree has a right to a future stream of income attributable to past employment" and because the pension was distributed as marital property, "the asset [is] outside the reach of the dependent spouse's need-based alimony claim." Ibid. This court reiterated a principle from Steneken that,

> [I]t would be unfair if the dependent spouse were able to assert what amounts to a double claim on the spouse employee's pension . . . [and] it would be inequitable for her to be able to include his pension income twice for her benefit, first for a share of equitable distribution, and second for inclusion in his cash flow determination of an alimony base.
>
> [Id. at 437 (quoting D'Oro v. D'Oro, 187 N.J. Super. 377, 379 (Ch. Div. 1982)) (internal quotations omitted).]

In this case, the trial judge calculated defendant's income after retirement as $51,628 per year, which included the $9,055 from his pension. We agree

with defendant that the judge erred in including defendant's pension in computing his income because defendant's pension was equitably distributed during the final judgment of divorce. The judge's calculation contravened the principles articulated in Steneken because it deprived defendant of his "right to a future stream of income attributable to past employment" and unfairly included an asset that was distributed as marital property for purposes of determining alimony. Steneken, 367 N.J. Super. at 439. That error was not harmless and requires reversal for a recalculation of defendant's income. Because we are remanding on other grounds, explained in detail below, on remand the court shall exclude defendant's pension payments in determining defendant's income.

As a second ground for his appeal, defendant asserts that the trial judge made certain assumptions and inferences without conducting a hearing to adduce evidence to support her conclusions. In particular, defendant complains that the judge had no evidentiary basis to conclude that plaintiff "likely" had no ability to adequately save for retirement. Defendant alleges that without adducing proof of what plaintiff's budget was when the parties divorced in 1999, and absent proof of how plaintiff disposed of her share of defendant's pension, the court's decisions to reduce, but not eliminate, defendant's alimony and life insurance obligations were based on nothing but pure speculation.

10

The New Jersey Court Rules state that a court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right. . . ." R. 1:7-4(a).  This requires the court to "disclose an analysis of the facts as they apply to the many applicable factors." Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 561 (App. Div. 2009).  As stated by the New Jersey Supreme Court, "[n]aked conclusions do not satisfy the purpose of R. 1:7-4."  Curtis v. Finnernan, 83 N.J. 563, 570 (1980).  Because "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion," Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990), the absence of adequate findings "necessitates a reversal."  Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996).

In her written decision, the trial judge without explanation reduced defendant's life insurance obligation from $142,125 to $25,000.  Similarly, the judge made no specific findings to support her decision to downward adjust defendant's alimony obligation from $250 per week to $150 per week.

Finally, with respect to the critical issue of whether plaintiff had adequately saved for retirement, the judge disregarded the issue of how plaintiff disposed of her share of defendant's pension.  The judge stated expressly that

"[p]laintiff offers no explanation" on that issue. Instead, the judge speculated that the "pension may have been liquidated and spent down to meet expenses or perhaps reinvested," and "infer[ed] that the marital pension may have replaced her lost income for 2014 while in treatment for cancer." The judge also did not require proofs or make any factual findings regarding plaintiff's monthly budget at the time of the divorce, or whether she had some ability to put aside some of her (admittedly meager) income during the seventeen years she was not under treatment for cancer. Thus, the judge's decision that "[i]t is unlikely [p]laintiff had the ability to save for retirement, as she currently has no savings, and was out of work for a year due to cancer treatments" is a naked conclusion untethered to any supporting facts.

We are sensitive to the judge's apparent reluctance to force these parties of advanced age and limited means to marshal the appropriate proofs and conduct a full plenary hearing. Unfortunately, under these circumstances we are constrained to remand the matter to allow the judge to set forth the factual and legal basis for her decision after a full plenary hearing. That hearing should require plaintiff to come forward with evidence that she saved for retirement to the extent she was able to do so, and how plaintiff disposed of her share of defendant's pension. The judge may also consider plaintiff's argument that

12

defendant is hiding assets and whether a reduction, if any, rather than an elimination of defendant's alimony obligation is appropriate.

Lastly, defendant raises two constitutional issues about the alimony statute itself. He first asserts that his constitutional rights were violated because N.J.S.A. 2A:34-23(j)(3) is too vague to enable judges to make a decision about the ability of the obligee to save for retirement because it does not provide instructions for judges to make this finding. He also asserts that this statute creates two classes of litigants whose alimony agreements upon retirement are reviewed differently based on whether the parties were divorced before or after the 2014 amendment of the statute. However, neither of the constitutional arguments were raised below, and we decline to address them for the first time on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008). "[O]ur appellate courts will decline to consider questions or issues not properly presented to the [tribunal below] when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder, 62 N.J. at 234 (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION