# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2190-18T1

S.M.,

     Plaintiff-Appellant,

v.

J.M.,

     Defendant-Respondent.

_____

J.M.,

     Plaintiff-Respondent,

v.

S.M.[1]

     Defendant-Appellant.

_____

     Argued January 6, 2020 – Decided May 5, 2020

     Before Judges Moynihan and Mitterhoff.

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(c)(12).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket Nos. FV-09-0334-19 and FV-09-0349-19.

Armando Ruben Horta argued the cause for appellant (The Horta Law Group LLC, attorneys; Armando Ruben Horta, of counsel and on the briefs).

Erica Hernández De Luna argued the cause for respondent (Northeast New Jersey Legal Services, attorneys; Erica Hernández De Luna, of counsel and on the brief).

PER CURIAM

Appellant S.M. challenges a December 12, 2018, final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -33. He also appeals the dismissal of his complaint under the PDVA seeking a temporary restraining order (TRO) against his wife, respondent J.M. At trial, the parties and a responding police officer provided conflicting testimony concerning the events leading up to and including the incident in question. At the conclusion of the trial, the judge found J.M.'s account of the incident to be more credible and consistent with the objective facts than S.M.'s account. Accordingly, the trial judge dismissed S.M.'s domestic violence complaint against J.M. and vacated the TRO that had

2

been entered against her.  That same day, the court entered an FRO against S.M.[2]

S.M. appeals both orders, claiming that the judge's decision was insufficiently supported by the record, and that the judge did not adequately set forth his reasoning why an FRO was necessary as required by the second prong of Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).  Having reviewed the record in light of the governing legal principles, we affirm in part and remand in part.

We discern the following facts from the record.  On September 4, 2012, the parties married in India.  S.M. was a citizen of the United States, and J.M. was a citizen and resident of India.  In October 2013, J.M. moved to the United States on a visa sponsored by S.M. and began living with him.  Thereafter, the parties had two children, a son in August 2014 and a daughter in June 2017.  S.M. worked in the medical field as the sole financial provider for the family, while J.M. tended to domestic matters as a stay-at-home mother.

On August 5, 2018, S.M. called the police after an argument occurred between the parties.  Officer Jeffrey Vega of the North Bergen Police Department and his supervisor responded to the couple's residence and spoke

---

[2]  An amended FRO was entered on January 14, 2019.

A-2190-18T1

to both parties.  While S.M. spoke English, J.M. spoke primarily Punjabi and had difficulty conversing with the officers in English.  After speaking with both parties, the responding officers arrested J.M.  That same day, S.M. filed a complaint and obtained a TRO against J.M., with J.M. filing a complaint and obtaining a TRO against S.M. the following day, each party alleging an assault.[3]  Both parties amended their TRO's on August 8, 2018, with S.M. adding details of an incident between the parties that occurred in March 2014, and J.M. adding that S.M. had violated the initial TRO by following her when she was on a bus, implicating the predicate act of contempt of a domestic violence order, N.J.S.A. 2C:29-9(b).

Trial spanned across several days before the judge between August 15, 2018 and December 12, 2018.  At trial, the judge heard testimony from J.M., S.M., and Officer Jeffrey Vega, who responded to the parties' residence on the night of the August 5, 2018 incident.[4]

---

[3]  Both S.M. and J.M. alleged assault, N.J.S.A. 2C:12-1, which is deemed a predicate act for the purposes of the PDVA.  See N.J.S.A. 2C:25-19(a)(2).

[4]  Dr. Shashi Jain, a licensed psychologist who evaluated J.M., also testified on her behalf.  As the trial judge did not rely on this testimony in issuing his decision, we do not discuss this testimony in our opinion.

According to J.M.,[5] at approximately 10:30 a.m. on the morning of the incident, she, her husband and both children had walked to a local park. Shortly after arriving, J.M. realized that both S.M. and their son were no longer in view. Consequently, J.M. called S.M. several times on his cell phone, but S.M. did not answer. J.M. testified that S.M. eventually called her back and told her that he had taken their son to a nearby store. J.M. went to the store, but neither S.M. nor her son was there when she arrived.

J.M. testified that she again called her husband, who told her that he was now outside the store. J.M. exited the store, but again she could not find S.M. or their son. When J.M. again called, S.M. stated that he was now on the other side of the store. J.M. responded that if her husband did not disclose his location, she would call the police. According to J.M., her husband then said: "Who are you threatening? Why [are] you trying to threaten me? Do something if you like to do. Show me."

J.M. testified that she returned to the park and waited for S.M., who had indicated that he would return to that location. J.M. waited for around twenty minutes, during which time S.M. never appeared. She then returned with her daughter to the parties' home. J.M. attempted to call the Division of Child

_____

[5]  At trial, J.M. participated with the assistance of a Punjabi interpreter.

A-2190-18T1

Protection and Permanency, testifying that she did so because S.M. had on prior occasions taken the parties' children and locked J.M. in their home, but there was no answer because August 5 was a Sunday. J.M. stated that she returned to her building but had no key for her apartment, so her neighbors invited her into their apartment after she rang their doorbell. About an hour after entering her neighbor's apartment, S.M. returned to the parties' apartment with their son, and J.M. and their daughter returned shortly thereafter.

J.M. testified that she then began to question S.M., who responded that she had no right to ask him questions because her "status was that of a maid, and [her] job was just to take care [of their] children." According to J.M., S.M. then went to the kitchen and retrieved a knife. While J.M. was holding their daughter, S.M. placed the knife in J.M.'s right hand and tried to force her to cut herself. J.M. pushed S.M. away, causing the knife to drop to the floor, and placed their daughter on the floor. J.M. attested that she then tried to recover the knife, but S.M. pulled her hair around four or five times and slammed her head into the wall. J.M. conceded that during this scuffle, she might have caused minor injury to S.M. while struggling to defend herself. J.M. then grabbed the knife and ran to the bathroom, which did not have a lock, in fear.

6

J.M. emerged from the bathroom after about five minutes, when S.M. was calling the police. She grabbed the phone and attempted to speak with the dispatcher, but they were unable to converse due to her limited proficiency with the English language. J.M. testified that S.M. laughed at her because she was unable to communicate with the dispatcher and took the phone from her. The police then arrived, and J.M. was subsequently arrested.

J.M. also testified about an incident that occurred in December 2017, when she had been washing her children's clothes in the parties' bathroom washtub. S.M. entered the bathroom and pushed her, causing her to fall and her left arm to hit the wall and the bathtub. She described her injury as "severe," but she never sought treatment. While S.M. claimed at the time that this was accidental, J.M. disputed this, maintaining that "this had occurred [many] times. He has beaten me up every night, and also my children a number of times. And he always says that it was an accident."

J.M. also testified that S.M. had violated the TRO entered against him. J.M. alleged that on August 8, she had taken a bus. She claimed that the bus was empty, but S.M. got on at the stop after hers and sat behind her. S.M. did not speak to J.M. and exited the bus after one or two stops. J.M. then got up

and exited the bus at Journal Square, where she saw S.M. standing at the bus stop, but the two had no interaction.

S.M.'s account of the incident differed from that of his wife. S.M. stated that after going to the park with J.M. and their children, he decided to take their son to visit S.M.'s father's house. S.M. stated that he returned to the parties' residence thirty minutes later, and that J.M. was upset because "she never allow[s] us to go outside." S.M. asserted that J.M. then stated "I [am going to] kill you today," grabbed a knife and attacked him. S.M. testified that he grabbed J.M.'s wrist, causing her to drop the knife, and that she then pushed him in the chest, causing him to fall on the parties' bed. S.M. stated that J.M., who is about his same weight, then sat on his chest and began to choke him while he struggled to get out from under her.

S.M. recalled that J.M. then left him, retrieved the knife, and began to cut her left wrist. According to S.M., the parties' son was crying and was begging J.M. not to cut herself. J.M. went to the bathroom and closed the door, and S.M. began to hear sounds coming from the bathroom, which he claimed sounded like she was hitting something, possibly her head. S.M. claimed that he was scared and his children were crying, so he decided to call the police, who arrived shortly thereafter.

8

S.M. also testified as to a separate incident on March 22, 2014, wherein J.M. turned on a gas stove to make tea for him and left the stove on for an hour and fifteen minutes. S.M. stated that he believed that J.M. intended to harm him and other family members who were present.

Officer Vega testified that he had arrived at the parties' residence on August 5 with his supervisor at around 12:30 p.m. and spoke to S.M. Vega stated that S.M. was a little shaken up and had red marks on his neck, and that S.M. advised Vega that he was in a verbal dispute with J.M. Vega testified that he then spoke to J.M., who he noted as having small cuts on her wrists. Vega informed the trial judge that based on their observations and their conversations with both parties, he and his supervisor determined J.M. to be the aggressor in the altercation, and they arrested her.

On cross-examination, Vega acknowledged that it was more difficult to communicate with J.M. because neither he nor his supervisor spoke Punjabi. Vega also testified that his belief that the cuts on J.M.'s wrist were self-inflicted was based on S.M.'s call, and because J.M. had barricaded herself in

the bathroom with a knife. Vega acknowledged that S.M. did not report on the night of the incident that J.M. had tried to stab him with a knife.[6]

On December 12, 2018, the judge entered an order dismissing S.M.'s domestic violence complaint and vacating the TRO entered against J.M. That same day, the judge entered an FRO against S.M. In his oral decision, the judge concluded that J.M.'s testimony and her description of the events was credible and that S.M.'s account was not credible.

The judge concluded that:

> There was . . . a prior incident in December . . . 2017, where [J.M.] was in the bathroom washing clothing. [S.M.] came in and pushed her. Her left arm hit the tub and the wall. She said she suffered pain after that. She described her injury as severe, although the only treatment she received was her taking two Motrin to relieve the pain. That, I find, was also an act of assault.[7]

Finally, as to S.M.'s complaint, the trial judge found that

---

[6] This allegation was also not contained in S.M.'s first TRO or in the police report.

[7] The trial judge rejected, however, that J.M.'s testimony regarding her interactions with S.M. on the bus and at Journal Square on August 8 were sufficient to prove contempt of J.M.'s TRO because he neither spoke to nor interacted with her, and there was no evidence that he knowingly or purposefully violated the restraining order.

his testimony that she tried to stab him is not believable. His testimony about the incident in March . . . 2014, where he alleges that she left gas on the stove in the residence where they were living, as alleged in the complaint, it would have been an attempt to kill [S.M.'s] family members. But his testimony about that incident does not support the conclusion that . . . she did that intentionally to try to harm anyone.

This appeal ensued.

On appeal, S.M. raises the following arguments:

POINT I
THE TRIAL COURT ERRED IN GRANTING PLAINTIFF A [FRO] AS THE TRIAL COURT DID NOT CONSIDER THE SECOND PRONG OF SILVER V. SILVER, 387[] N.J. SUPER. 112 (APP. DIV. 2006).

POINT II
THE TRIAL COURT ERRED IN GRANTING PLAINTIFF A [FRO] AS SAME WAS NOT BASED ON ADEQUATE SUBSTANTIAL OR CREDIBLE EVIDENCE.

POINT III
THE TRIAL COURT ERRED IN DISMISSING THE [TRO] ENTERED AGAINST [DEFENDANT] AS SAME WAS CONTRARY TO THE EVIDENCE PROVIDED BY WAY OF TESTIMONY OF [PLAINTIFF] AND [PLAINTIFF'S] WITNESS, OFFICER JEFFREY VEGA, OF THE NORTH BERGEN POLICE DEPARTMENT.

Our review of a domestic violence order is limited. We must accept findings by the trial judge that are "supported by adequate, substantial,

11

credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Deference is also particularly warranted "[b]ecause of the family courts' special jurisdiction and expertise in family matters." Id. at 413. Accordingly, "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (alteration in original) (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

In Silver, we summarized the two-step analysis courts must apply in determining whether to grant an FRO under the PDVA. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

We conclude that the judge's findings as set forth above are amply "supported by adequate, substantial, [and] credible evidence," Cesare, 154 N.J. at 412, and under our deferential standard of review, we discern no reason to

12

disturb his conclusion that it was S.M., and not J.M., that perpetrated the predicate act of assault. For the same reason, we also affirm his decision to dismiss the complaint and TRO entered against J.M.

We reject S.M.'s argument that the judge disregarded the testimony of Officer Vega; rather, the judge appropriately found that Officer Vega was not a witness to the incident and that he had relied primarily on S.M.'s report because he was not able to fully communicate with J.M. based on a mutual language barrier. As the judge aptly observed, it was not until trial that J.M., with the assistance of a Punjabi interpreter, was able to fully articulate her account of the incident. Having heard that account, the judge observed that when J.M. "c[ame] out of the bathroom without having injured herself," it directly contradicted SM.'s assertion that she was trying to kill herself. The judge commented, "that's part of the reason why I find her version of what happened more believable than his." Beyond this, the judge emphasized that S.M. did not report that night that J.M. had attempted to stab him, "which was the thrust of his complaint and [is] what's alleged in the complaint." We find the judge's cogent observations to be fully supported by the record and thus affirm his determination that the first prong of Silver was satisfied.

13

"The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. "The second prong set forth in Silver requires the conduct must [be] imbued by a desire to abuse or control the victim. R.G. v. R.G., 449 N.J. Super. 208, 228 (App. Div. 2017) (citing Silver, 387 N.J. Super. at 126-27); see also Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995) (defining domestic violence as "a pattern of abusive and controlling behavior injurious to its victims"). Whether a defendant's conduct was designed to abuse or control the plaintiff should be assessed in the context of the "entire relationship between the parties." Cesare, 154 N.J. at 405.

"Although this second determination . . . is most often perfunctory and self-evident," Silver, 387 N.J. Super. at 127, it is clear that a need for an FRO should not flow automatically from the finding of a predicate act of domestic violence. Id. at 126-27 (citing Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999)). "[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. The six factors include: (1) the previous history of

domestic violence between the parties; (2) "[t]he existence of immediate danger to person or property;" (3) the financial circumstances of the parties; (4) the best interests of the victim; (5) the protection of the victim's safety in relation to custody and parenting time; and (6) the existence of a restraining order in a different jurisdiction. N.J.S.A. 2C:25-29(a)(1) to (6). The court may also look to other relevant factors not included in the statute. N.J.S.A. 2C:25-29(a) ("The court shall consider but not be limited to the following factors[.]"); N.T.B. v. D.D.B., 442 N.J. Super. 205, 223 (App. Div. 2015) (noting the statutory factors are "nonexclusive").

S.M. argues that the judge did not address the foregoing factors before entering a FRO. We agree. "Trial judges are under a duty to make findings of fact and to state reasons in support of their conclusions." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996)). "Naked conclusions" do not satisfy the requirements of Rule 1:7-4(a). Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562 (App. Div. 2009) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)).

Unfortunately, the judge made no explicit finding that an FRO was necessary, nor did he address any of the second-prong Silver factors with

15

reference to the facts of this case. We are therefore constrained to remand the matter to the trial court for the development of a proper reviewable record, limited to the second prong of <u>Silver</u>.

On remand, the judge shall make appropriate findings of fact and conclusions of law addressing those factors based on the existing record. In the interim, we direct that the trial court on remand expeditiously enter an order vacating the FRO and reinstating the TRO against S.M., which shall remain in full force and effect pending the judge's amplification of reasons. We express no opinion as to the outcome, and either party dissatisfied by the judge's decision may seek further appellate review.

To the extent we have not addressed any of the parties' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2190-18T1